UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENJAMIN A. RINE,

    Plaintiff,

v.

I. C. SYSTEM, INC. and
CHARTER COMMUNICATIONS, INC.,

    Defendants.

Case No. 20-696

Hon.

# COMPLAINT AND JURY DEMAND

Plaintiff Benjamin A. Rine, by and through his counsel, Westbrook Law PLLC, for his Complaint against Defendants I. C. System, Inc. and Charter Communications, Inc. states as follows:

## INTRODUCTION

1.    Plaintiff brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* due to Defendant I. C. System, Inc.'s unlawful activities in connection with attempting to collect a debt purportedly owed to Defendant Charter Communications, Inc. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

2.    Defendant I. C. System, Inc., a debt collector, has willfully violated the FDCPA by: (1) attempting to collect a purported debt that was discharged in bankruptcy and uncollectible as a matter of law; (2) communicating derogatory debt information regarding Plaintiff to one or

more credit reporting agencies that Defendant I. C. System, Inc. knew or should have known to be false; and (3) failing to provide to Plaintiff the validation and dispute notice required by 15 U.S.C. 1692g in connection with its collection of a consumer debt.

3. Defendant I. C. System, Inc.'s attempts to collect a debt purportedly owed by Plaintiff after that debt was unequivocally discharged in bankruptcy violated both the discharge injunction, 11 U.S.C. § 524, and the FDCPA, 15 U.S.C. §§ 1692e and 1692f.

4. Defendant I.C. System, Inc.'s post-discharge collection efforts also violated the Michigan Occupational Code ("MOC") as applied to collection agencies, M.C.L. §339.901 *et seq.*

5. Defendant Charter Communications, Inc. violated the Michigan Regulation of Collection Practices Act, M.C.L. § 445.251 *et seq.* by referring a discharged and uncollectible debt for collection by Defendant I. C. System, Inc. and communicating false debt information to Defendant I. C. System, Inc. in connection with that referral.

## THE PARTIES

6. Plaintiff Benjamin A. Rine is an individual residing in Hudsonville, Ottawa County, Michigan. Plaintiff is a "consumer" as that term is used in the FDCPA.

7. Defendant I. C. System, Inc. ("ICS") is a Minnesota corporation with its principal place of business in the State of Minnesota. ICS's registered agent in Michigan is The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

8. ICS's primary business purpose is the collection of defaulted consumer debts.

9. ICS conducts business in the state of Michigan using interstate wires and mails.

10. ICS holds itself out as a debt collector and offers its services as a debt collector to companies—specifically in the utility and telecommunications industries—which provide consumer services.

2

11. ICS is licensed (No. 2402002393) by the State of Michigan to collect consumer debts in Michigan. ICS is a "collection agency" and a "licensee" as those terms are used in the MOC, M.C.L. § 339.901.

12. ICS is a "debt collector" as that term is defined in the FDCPA, 15 U.S.C. § 1692a.

13. Defendant Charter Communications, Inc. ("Charter") is a Delaware corporation headquartered in Stamford, Connecticut.

14. Charter is primarily a telecommunications company and provides consumer services such as cable television and broadband internet in the State of Michigan. Charter does business using various trade names, including "Spectrum" and "Charter Spectrum."

15. Charter participates in collecting its own claims for payment from consumers, including through direct billing, an internal collections department, and referrals to outside collection firms such as ICS.

16. Charter is a "regulated person" as that term is defined in the Michigan Regulation of Collection Practices Act, M.C.L. § 445.251.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

18. Venue is appropriate in this Court because the conduct complained of took place within this District.

## FACTUAL ALLEGATIONS

19. Plaintiff utilized Charter's telecommunications services at his residence in Hudsonville, Michigan over the course of several years, periodically incurring debts to Charter.

20. Specifically, Plaintiff subscribed to cable television and broadband internet services through Charter, which used the trade name Spectrum in connection with these services.

21. Plaintiff's use of Charter's telecommunications services was primarily for personal and household purposes. These services were used by Plaintiff, his wife, and his three (3) children for non-business purposes.

22. Charter offers and provides business-class telecommunications services to some users; however, the services used by Plaintiff were consumer-class and reflected their household use.

23. On July 31, 2018, Plaintiff filed a petition for Chapter 7 bankruptcy. *In re Rine*, No. 18-3288 (Bankr. W.D. Mich.).

24. Plaintiff had generally paid his recurring debts to Charter; however, at the time of Plaintiff's bankruptcy filing, he owed approximately $101 (the "Debt") to Charter for the most recent billing period.

25. Plaintiff listed the Debt to Charter in his bankruptcy petition on Official Form 106E/F.

26. Plaintiff received an Order of Discharge in the bankruptcy on November 19, 2018.

27. The Debt to Charter was included in Plaintiff's discharged debts.

28. A notice of Plaintiff's Discharge Order was mailed to Charter on December 1, 2018.

29. Charter ceased sending billing statements regarding the Debt to Plaintiff after the filing of Plaintiff's bankruptcy petition.

30. Upon information and belief, Charter engaged ICS to collect the Debt in June or July of 2020. At that time, the Debt had already been discharged in bankruptcy and was legally uncollectible.

31. As part of Charter's engagement of ICS, Charter represented to ICS that the Debt was collectible.

32. As part of Charter's engagement of ICS, Charter provided information regarding the Debt that included the purported amount owing of approximately $101.

33. As part of Charter's engagement of ICS, Charter communicated to ICS that the Debt was delinquent.

34. Charter failed to inform ICS that the Debt had been discharged in bankruptcy and was not collectible.

35. As part of Charter's engagement of ICS, Charter requested that ICS seek to collect the Debt from Plaintiff.

36. ICS has attempted to collect the Debt since the entry of the Discharge Order.

37. On or about July 9, 2020, ICS sent to Plaintiff a document entitled "SETTLEMENT OFFER" that prominently featured an "ACCOUNT SUMMARY" section identifying "Spectrum" as the "Creditor" and reflecting a debt of $101. (Ex. 1, "Collection Letter.")

38. ICS knew "Spectrum" to be a trade name of Charter.

39. The Collection Letter identified ICS as a "debt collector attempting to collect a debt" and demanded payment. (*Id.*)

40. The Collection Letter was an attempt to collect the Debt.

41. At the time the Collection Letter was sent to Plaintiff, the Debt had been discharged and was legally uncollectible.

42. In July of 2020, ICS reported the Debt to Experian, a national credit reporting agency, as a delinquent account in collections.

43. At the time ICS reported the Debt to Experian, the Debt was not delinquent.

44. ICS reported false debt information regarding Plaintiff to Experian.

45. As a result of ICS's report to Experian regarding the Debt, Experian's credit file regarding Plaintiff shows a negative entry (called a "tradeline") under ICS's name.

46. The Experian tradeline for ICS shows an account that is delinquent and in collections, which is considered a "major derogatory" event and severely damages Plaintiff's credit rating.

47. The Collection Letter was the initial communication to Plaintiff from ICS regarding the Debt.

48. The FDCPA, 15 U.S.C. § 1692g, required ICS to send, within five days after sending its initial communication to Plaintiff regarding the Debt, a written notice containing: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless Plaintiff, within thirty days after receipt of the notice, disputed the validity of the debt, or any portion thereof, the debt would be assumed by ICS to be valid; (4) a statement that if Plaintiff notified ICS in writing within the thirty-day period that the debt, or any portion thereof, were disputed, ICS would obtain verification of the debt or a copy of a judgment against Plaintiff and a copy of such verification or judgment would be mailed to Plaintiff by ICS; and (5) a statement that, upon Plaintiff's written request within the thirty-day period, ICS would provide Plaintiff with the name and address of the original creditor, if different from the current creditor.

49. ICS failed to send to Plaintiff the notice required by 15 U.S.C. § 1692g.

50. On July 22, 2020, Plaintiff received an electronic alert of a new negative credit event and discovered that ICS had communicated negative and false information about the Debt to Experian.

51. On July 23, 2020, Plaintiff telephoned ICS at the number ICS provided to Experian, (888) 735-0516. ICS uses this telephone number to connect its collection agents to consumers for the purpose of collecting debts.

52. During the July 23, 2020 call, Plaintiff spoke to an ICS representative identifying himself as Josh Brown. After obtaining identifying information from Plaintiff, Mr. Brown referenced the "Spectrum" account at issue and told Plaintiff the debt ICS was attempting to collect from Plaintiff was from "Spectrum TV," i.e., Charter.

53. During the July 23, 2020 call, Plaintiff told Mr. Brown that the Debt had been discharged in bankruptcy and was told in return to have his attorney contact ICS.

54. Since the July 23, 2020 call, ICS has taken additional affirmative steps to report the Debt to Experian as delinquent and in collections.

55. ICS's purpose in reporting the Debt to Experian is collection of the Debt from Plaintiff.

56. Upon information and belief, ICS has performed an analysis regarding whether reporting debt information to credit reporting agencies increases the likelihood of the reported debts being paid and concluded that reporting to credit reporting agencies does in fact increase the likelihood of the reported debts being paid.

57. ICS uses credit reporting as an incentive to pay debts in two ways: (1) for debts not yet reported to credit reporting agencies, ICS may threaten negative credit reporting in order to incentivize the payment of debts; and (2) for debts already reported to credit reporting agencies,

ICS may offer to modify or remove negative credit reporting in order to incentivize the payment of debts.

58. Plaintiff's Experian credit file contains a "public record" item specifically detailing Plaintiff's Chapter 7 bankruptcy, including the date the petition was filed and the date of entry of the Discharge Order.

59. Upon information and belief, at all times since the Debt was assigned to ICS for collection, ICS has had on-demand access to reports from Experian regarding Plaintiff. Such reports would specifically detail Plaintiff's Chapter 7 bankruptcy, including the date the petition was filed and the date of entry of the Discharge Order.

60. As of July 9, 2020, the date of the Collection Letter, ICS knew or should have known that the Debt was legally uncollectible.

61. As of each date on which ICS reported information about the Debt to Experian, ICS knew or should have known that the Debt was legally uncollectible.

62. Charter's continuing attempts to collect the Debt from Plaintiff after the Discharge Order have caused Plaintiff to experience mental stress, emotional distress, embarrassment, exacerbation of Plaintiff's existing post-traumatic stress disorder condition, and other actual harms.

63. ICS's continuing attempts to collect the Debt from Plaintiff after the Discharge Order have caused Plaintiff to experience mental stress, emotional distress, embarrassment, exacerbation of Plaintiff's existing post-traumatic stress disorder condition, and other actual harms.

64. ICS's failure to provide the notice required by 15 U.S.C. § 1692g has caused Plaintiff actual harm in the form of deprivation of information to which Plaintiff is legally entitled.

65. ICS's communications to Experian have caused Plaintiff to experience mental stress, emotional distress, embarrassment, exacerbation of Plaintiff's existing post-traumatic stress

8

disorder condition, financial harms in the form of reduced access to affordable credit, and other actual harms.

### COUNT I – FDCPA, 15 U.S.C. §§ 1692e, 1692f, 1692g, 1692k
### Defendant ICS

66. The foregoing paragraphs are incorporated herein by reference.

67. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS used a "false, deceptive, or misleading representation or means in connection with the collection of any debt" in violation of 15 U.S.C. § 1692e.

68. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS falsely represented "the character, amount, or legal status of any debt," in contravention of 15 U.S.C. § 1692e(2)(A).

69. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS communicated "credit information which is known or which should be known to be false" in contravention of 15 U.S.C. § 1692e(8).

70. By communicating to Plaintiff that the purported debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS used a "false representation or deceptive means to collect or attempt to collect any debt" in contravention of 15 U.S.C. § 1692e(10).

71. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such debt was subject to the Discharge Order and legally uncollectible, ICS used an

"unfair or unconscionable means to collect or attempt to collect" a debt, in contravention of 15 U.S.C. § 1692f.

72. By communicating to Experian that the Debt was enforceable and delinquent, when it had in fact been discharged in bankruptcy, ICS "communicat[ed] … to any person credit information which is known or which should be known to be false" in contravention of 15 U.S.C. § 1692e(8).

73. By failing to provide Plaintiff with notice of his validation and dispute rights within five days of its initial communication to Plaintiff regarding the Debt, ICS violated 15 U.S.C. § 1692g.

WHEREFORE, Plaintiff requests that judgment be granted in his favor specifying the following relief:

a. Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

b. Statutory costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k; and

c. Such further relief as the Court deems just and proper.

### COUNT II – MOC, M.C.L. § 339.915
### Defendant ICS

74. The foregoing paragraphs are incorporated herein by reference.

75. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS communicated "with a debtor in a misleading and deceptive manner" in contravention of M.C.L. § 339.915(a).

76. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS made

10

"an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt" in contravention of M.C.L. § 339.915(e).

77. By communicating to Plaintiff that the purported Debt was collectible and owing, even though such Debt was subject to the Discharge Order and legally uncollectible, ICS misrepresented "[t]he legal rights of the creditor or debtor," in contravention of M.C.L. § 339.915(f).

78. ICS's violations of the MOC were willful because, *inter alia*, ICS had actual notice of the discharge of Plaintiff's purported Debt.

WHEREFORE, Plaintiff requests that judgment be granted in his favor specifying the following relief:

a. Treble actual and statutory damages pursuant to M.C.L. § 339.916;

b. Statutory costs and reasonable attorney fees pursuant to M.C.L. § 339.916; and

c. Such further relief as the Court deems just and proper.

### COUNT III – MRCPA, M.C.L. § 445.252
### Defendant Charter

79. The foregoing paragraphs are incorporated herein by reference.

80. By communicating to ICS that the Debt was collectible and delinquent, Charter made "an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt" in contravention of M.C.L. § 445.252(e).

81. Charter's violation of the MRCPA was willful because, *inter alia*, ICS had actual notice of the discharge of Plaintiff's purported Debt.

WHEREFORE, Plaintiff requests that judgment be granted in his favor specifying the following relief:

    a. Treble actual and statutory damages pursuant to M.C.L. § 445.257;

    b. Statutory costs and reasonable attorney fees pursuant to M.C.L. § 445.257; and

    c. Such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: July 29, 2020

/s/ Theodore J. Westbrook
Theodore J. Westbrook
**Westbrook Law PLLC**
Attorney for Plaintiff
6140 28th St. SE, Suite 115
Grand Rapids, MI 49546
(616) 288-9548
twestbrook@westbrook-law.net

## JURY DEMAND

Plaintiff Benjamin A. Rine, by and through his counsel, hereby demands a trial by jury as to all claims and issues so triable.

Respectfully submitted,

Dated:  July 29, 2020

/s/ Theodore J. Westbrook
Theodore J. Westbrook
**Westbrook Law PLLC**
Attorney for Plaintiff
6140 28th St. SE, Suite 115
Grand Rapids, MI 49546
(616) 288-9548
twestbrook@westbrook-law.net